# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**JERMAINE HALL,**

    Petitioner,

vs.

                          **CASE NO. 4:07cv350-SPM/WCS**

**WALTER A. McNEIL,**

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This is an amended petition for writ of habeas corpus filed by Jermaine Hall pursuant to 28 U.S.C. § 2254. Doc. 8. Petitioner challenges his convictions for burglary and battery (count one), battery upon a person over 65 years of age (counts two and three), conspiracy to commit robbery (count four), and robbery (count five). As to count one, Petitioner was sentenced to a term of 25 years in prison. The other sentences (only for counts four and five) were concurrent. Petitioner was not sentenced on counts two and three. The convictions were after guilty pleas in the Circuit Court of the Second Judicial Circuit, in and for Madison County, Florida, case number 03-115-CF.

Respondent filed an answer, doc. 18, and the record as paper exhibits, doc. 19, and Petitioner filed a traverse, doc. 23. Respondent agrees that the petition was timely filed. Doc. 18, p. 7. Hereafter references to exhibits are to the exhibits filed as document 19.

**Section 2254 Standard of Review**

For a claim fairly presented and adjudicated on the merits in state court, and pursued through one complete round of the review process, this court may reach the merits if Petitioner shows that the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1) and (2); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Upon such a showing, this court reviews the federal claim on the merits without the deference otherwise afforded to the state court's determination. Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-59, 168 L.Ed.2d 662 (2007); Jones v. Walker, 496 F.3d 1216, 1228 (11th Cir. 2007) (citing Panetti).

An adjudication of the merits, even without an explanation or written opinion, is enough for the deference of § 2254(d) to apply. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002) ("all that is required is a rejection of the claim on the merits, not an explanation."); Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 776 (11th Cir. 2003) (same); Herring v. Sec'y for the Dep't of Corr., 397 F.3d 1338, 1347

(11th Cir.), *cert. denied*, 546 U.S. 928 (2005) ("[e]ven a summary, unexplained rejection of a federal claim qualifies as an adjudication entitled to deference under § 2254(d).").

A presumption of correctness is accorded state court findings of fact by former § 2254(d), and now by § 2254(e), even if the state court did not hold a hearing with live testimony, but considered only affidavits, other evidentiary materials, and the trial record.  May v. Collins, 955 F.2d 299, 310 (5th Cir.), *cert. denied*, 504 U.S. 901 (1992), *citing*, Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

> The fact that a 'live' hearing was not held is not controlling, and the state habeas court can generally even resolve conflicts in affidavits, where the judge who presided at trial also presides at the habeas hearing, as was the case here.

West v. Johnson, 92 F.3d 1385, 1411 n. 47 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997).  The presumption of correctness of state court factfinding may be rebutted only by "clear and convincing evidence."  Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005), *citing*, § 2254(e)(1).

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001). *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting*, Hill. The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370. In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial. United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A state court's adjudication of an ineffective assistance claim is not "contrary to" the rule of Strickland for purposes of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts

of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner asserts that he was advised by his trial attorney that if he entered a guilty plea, he would be sentenced to no more than eight years in prison.  Doc. 8, p. 4-A; p. 6 on ECF (electronic case filing docket).  He contends that had his attorney not been ineffective in this respect, he would not have entered a guilty plea.  *Id.*  Petitioner makes this allegation under penalty of perjury.  *Id.*, p. 6.

In his traverse, Petitioner clarifies that while his attorney did not *promise* that he would be sentenced to no more than eight years, his attorney led him to believe that that would be the outcome.[1]  Doc. 6, p. 7.  Attached to the amended petition is an affidavit from Petitioner's mother, Beverly Beasley, who states that Petitioner's attorney "told us that Jermaine couldn't get but (6) six to (8) eight years, with the point system."  Doc. 8, Beasley affidavit; p. 11 on ECF.  Respondent agrees that Petitioner exhausted his state court remedies as to this claim.  Doc. 18, p. 16.

The court denied the Rule 3.850 claim, finding that the basis for the claim was "belied by the transcript of the sentencing hearing." Ex. M, p. 14.  The court obviously meant the guilty plea hearing, as it quoted excerpts from the guilty plea transcript:

---

[1] At sentencing, counsel argued that Petitioner should be sentenced to the bottom range of the guidelines, which was about eight years four months, to be followed by probation. Ex. C., p. 11.

THE COURT:

>. . . and *the maximum sentence under Florida Law is life in prison, do you understand that*?

THE DEFENDANT: *Yes, sir.*

>              [*          *          *2]

THE COURT:

>. . . and then the Court will make the final decision as to what sentence is imposed, do you understand that?

THE DEFENDANT: Yes, sir.

>              [*          *          *]

TRIAL COUNSEL WILSON [Petitioner's attorney]

>Your Honor, I would just put on the record I advised Mr. Hall that if we proceeded to trial that if he were to be convicted and I'll state that I told him that I felt like *there was a good chance that he would be convicted in this case that the State would be asking for life, and I could not guarantee him that they would not be asking for life if he pled here today*.
>
>I have also advised him of basically what I feel the guidelines are going to say the bottom end of the guidelines. I've discussed with him departure sentences, how hard it is to get a departure, that it has to be written reasons for a departure; that you have to basically follow the grounds laid that are available to him under the law.
>
>And *I tried not to say, well, I can guarantee you this or guarantee that*. But I think he understands that that's where we're aiming and I think he believes that this is just a better way for him to be able to express his feelings as to what went on.
>
>*You got anything to add Jermaine*?

---

² Irrelevant portions of the transcript were omitted.

> THE DEFENDANT:
>
>> *No sir.* I just want to say that, first of all, I apologize for the situation going on and ask you for your mercy.

Ex. M, pp. 14-15 (emphasis added); *see* the transcript of the plea colloquy, Ex. B, pp. 2, 6-8. The state circuit court concluded:

> As can be[] seen from the exchange in the sentencing [sic] hearing, the Defendant was not given a guarantee as to the amount of prison time based on an open plea.

Ex. M, p. 15. The court concluded that Petitioner had failed to alleged a claim of ineffective assistance of counsel upon which relief may be granted.

In addition to these passages, the court also asked during the plea colloquy: "Now, has anyone promised you anything in return for your guilty plea?" Ex. B, p. 4. Petitioner said: "No, sir." *Id.* The court said: "So no promises have been made and your understand what the maximum sentences under the law are; is that correct?" *Id.* Petitioner said: "Yes, sir." *Id.* The court explained that at sentencing, Petitioner's attorney "will be arguing for a specific sentence on your behalf," but that "the Court will make a final decision as to what sentence is imposed," and Petitioner said he understood that. *Id.*, p. 6.

It is apparent from these passages that Petitioner knew that he was not promised anything in exchange for his guilty plea, and that his lawyer had done his best to not make any promises as to sentencing. It is also plain that Petitioner knew that he faced a maximum sentence of life in prison for count one, that his lawyer would argue for a specific sentence at sentencing (which indicates there was no specific sentence promised), and that the final decision was left to the court.

There is, however, a difference between a claim that counsel *promised* a particular sentence and a claim that counsel misled a defendant into thinking that he would receive a particular sentence. The latter focuses upon the soundness of the legal advice, but here there is no showing of incorrect advice or affirmative misrepresentation. *See*, *United States v. Campbell*, 778 F.2d 764, 768-769 (11th Cir.1985) (an attorney's "affirmative misrepresentation in response to a specific inquiry from the defendant may . . . under certain circumstances, constitute ineffective assistance of counsel.").

Petitioner made the same claim in his Rule 3.850 motion, that he was told by his attorney that "he would receive no more than eight years in prison." Ex. J, p. 3. The problem with the Rule 3.850 claim, which has been repeated here in this § 2254 petition, is that Petitioner alleged no specifics to show when the statement was made, the circumstances, and the basis for the advice. There has been no showing of a particular legal error prompting this allegedly erroneous advice. It appears from this record that all along Petitioner faced a possible life sentence and the State was actively pursuing that sentence, and Petitioner knew it. Further, the Rule 3.850 motion did not include the affidavit of Petitioner's mother, Ms. Beasley, which is dated two years after the Rule 3.850 motion was filed.[3] Ex. J. As already noted, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. "Conclusory allegations of

---

[3] The affidavit of Ms. Beasley is dated June 4, 2007. Doc. 8, affidavit; p. 11 on ECF. The Rule 3.850 motion was filed in state court pursuant to the mail box rule (submitted to prison officials for mailing) on July 6, 2005. Ex. J, p. 1.

ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

Against this unsupported claim of what counsel led Petitioner to believe is the statement of Petitioner's attorney that he made no promises, that he had told Petitioner that the State would be asking for life in prison if he were convicted after a trial, and he said that he could not even guarantee that the State would not be asking for life in prison after a guilty plea. In fact, that is what happened. The State asked for a sentence of life in prison, and the lowest sentence under the guidelines was over eight years.[4] The excerpts from the transcript do exactly what the state court said, that is, belie Petitioner's unsupported claim that his attorney thought that the most that Petitioner might receive was an eight year sentence and so advised Petitioner.

---

[4] The State asserted in response to Petitioner's Rule 3.850 motion that the lowest sentence recommended on the sentencing score sheet was a sentence of 106.35 months, or a sentence of eight years, 10.35 months. Ex. K, p. 17. The State also said that it had "noticed Defendant's Counsel that it would be asking for a life sentence." *Id*. Actually, the lowest sentence at sentencing as reflected on the score sheet at sentencing was 100.8 months, or eight years, 4.8 months. Ex. D, p. 27. Petitioner's counsel argued for a sentence at the bottom of the guidelines. *Id*., p. 32. The prosecutor argued that Petitioner "should receive a life sentence because he's effectively destroyed the lives of Reverend and Mrs. Boots." *Id*., p. 33.

Case No. 4:07cv350-SPM/WCS

Petitioner was given the chance to set the record straight at the guilty plea hearing, to tell the court that he had been told that the most he would receive after a guilty plea would be an eight year prison term, but he said nothing.  He also had a chance at sentencing.[5]  Given the lack of specifics in the claim as alleged, this silence was fatal to the claim.  In a post-conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).  The Court in Blackledge noted that where specific inquiry was made of the defendant, his counsel, and the prosecutor, and the entire proceeding was transcribed verbatim, a later contention that statements in the proceeding were untruthful would require an evidentiary hearing "only in the most extraordinary circumstances."  431 U.S. at 80, n. 19, 97 S.Ct. at 1632, n. 19; Lasiter v. Thomas, 89 F.3d 699, 702-703 (10th Cir.), *cert. denied*, 519 U.S. 998 (1996) (quoting Blackledge).

---

[5] Defense counsel told the court at sentencing that Petitioner had asked about withdrawing his plea.  The court indicated that they could consult and bring the question up later that day.  Ex. D, pp. 3-4.

It is recognized that the state court did not hold an evidentiary hearing on the Rule 3.850 motion, but in the face of the representations at the guilty plea colloquy and Petitioner's failure to allege an adequate claim of ineffectiveness, an evidentiary hearing was unnecessary.  With exceptions not applicable here, Section 2254(e)(2) provides that "if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim . . . ."  In state court, "the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error.  If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met."  (Michael) Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000).  Those "stringent requirements" are not implicated here.  See § 2254(e)(2)(A)(i) and (ii) (requiring, as a preliminary matter, that the claim be based either on a new rule of law, or on facts not previously discoverable by due diligence).

Consequently, by not alleging facts warranting an evidentiary hearing, Petitioner failed to develop the factual basis for his claim.  The state court's factual findings, which have not been rebutted by clear and convincing evidence, are presumed correct.  For all of these reasons, Petitioner has not shown that the state court's adjudication of this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(1) and (2).

**Ground Two**       .

Petitioner contends that his attorney was ineffective for failing to move to suppress his confession on the grounds that it was coerced and involuntary.  Doc. 8, pp. 4 and 4-C; pp. 5 and 8 on ECF.  Petitioner contends that his confession was involuntary and obtained by trickery because when the interrogation began, he told the officers that he did not know anything, and the interrogators then told him that the evidence against him was overwhelming, that conviction was certain, that he would be sentenced to prison for a large part of his life if he did not give a taped statement, and that if he gave a taped statement, the investigator "would make sure Petitioner did not get sentenced to a lot of time in prison."  Id.  Petitioner makes this allegation under penalty of perjury.  Id., p. 6.  Respondent concedes that Petitioner exhausted his state court remedies as to this claim.  Doc. 18, p. 35.

The issue of whether a confession was voluntary depends upon the confession "was the product of a free and deliberate choice rather than intimidation, coercion or deception."  United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005), *cert. denied*, 127 S.Ct. 748 (2006).  The totality of the circumstances must be considered. Hubbard v. Haley, 317 F.3d 1245, 1252 (11th Cir.), *cert. denied*, 540 U.S. 951 (2003). "Among the factors we must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police."  317 F.3d at 1253.  "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."  Thompson, 422 F.3d at 1295-1296.  However, "[i]t

is clear, that the police's use of a trick alone will not render a confession involuntary. . . . In cases involving police trickery where a confession has been held involuntary there have been other aggravating circumstances as well." United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984), *cert. denied*, 469 U.S. 1219 (1985). Therefore, a governmental promise of immunity does not, *per se*, render a confession involuntary. Taylor v. Singletary, 148 F.3d 1276, 1282 (11th Cir. 1998), *cert. denied*, 525 U.S. 1109 (1999).

In denying this claim in the Rule 3.850 motion without an evidentiary hearing, the trial court reasoned:

> The Defendant's recollection of the interview by Investigator Epps [sic, Epp Richardson] is belied by the record provided with the State's Response. As is shown by the transcript of the taped statement, none of the statements alleged to have been said by Investigator Epps were told to the Defendant. Additionally, the State has provided an affidavit from the Defendant's trial counsel which make plain that no grounds for a motion to suppress were available, and any motion to suppress would have been frivolous, and the filing of a frivolous motion is considered to be unprofessional.

Ex. M, p. 15.

The transcript of the interrogation is provided in this record and fully supports these findings. Exhibit M, pp. 54-73. The investigator, Epp Richardson, began the questioning by stating: "OK, I just turned on the recorder so I won't have to take notes or anything, ok." *Id.*, p. 54. This implies that Richardson began the recording without making any prefatory statements or threats to Petitioner. Richardson then explained the arrest warrants he had charging Petitioner with criminal offenses, and the nature of the criminal charges pending against Petitioner. *Id.* Richardson explained that Petitioner was under arrest and not free to leave. *Id.*, p. 56. Petitioner said, as he has alleged

here, "I don't even know nothing about it." *Id.* As claimed here, the threats allegedly came after this assertion by Petitioner. Richardson advised Petitioner of his *Miranda* rights. *Id.*, p. 56. Petitioner denied having been at the scene of the crime, and Richardson told him: "You're not listening to me, I can put you there, ok, It's not going to go away, ok, but I can put you there, ok." *Id.*, p. 57. Richardson then told Petitioner that he was giving him an opportunity to tell his side of the story, and he said: "I don't think that you're the kind of guy that would have initiated this on your own. I think you had some influence," that is, "peer pressure." *Id.*, p. 58. He acknowledged that we do not always make the right choice. *Id.*. Petitioner then began to admit his involvement with his codefendant. *Id.*, pp. 59-73. At no time during the confession did Richardson tell Petitioner that he would be sentenced to prison for a large part of his life if he did not give a taped statement or that if he gave a taped statement, the investigator "would make sure Petitioner did not get sentenced to a lot of time in prison." He did imply that there was evidence against Petitioner, as indicated above. Investigator Richardson submitted an affidavit during the Rule 3.850 proceedings averring that he never told Petitioner the things alleged in this claim. *Id.*, p. 82.

      The factual findings in this case at the Rule 3.850 proceeding were made by the trial judge who took the guilty plea and imposed sentence. The findings are based upon the transcript of the interrogation and the affidavit of Investigator Richardson. Petitioner has not come forward with clear and convincing evidence to rebut the presumption that these factual findings were correct as required by § 2254(e)(1). Consequently, Petitioner has not shown that the state court's adjudication of this second claim of ineffectiveness of counsel "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1) and (2).

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Jermaine Hall, challenging convictions and sentences in the Circuit Court of the Second Judicial Circuit, in and for Madison County, Florida, case number 03-115-CF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on October 14, 2008.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**